# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JON R. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 18-454 (RBW) |
| | ) | |
| EXECUTIVE OFFICE FOR UNITED | ) | |
| STATES ATTORNEYS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Jon R. Rogers, brings this civil action against the defendant, the Executive Office for United States Attorneys ("EOUSA"), for its alleged failure to comply with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), and the Privacy Act, 5 U.S.C. § 552a, and for its alleged common law breach of contract. Complaint ("Compl.") ¶ 1. Currently pending before the Court are the Defendant's Motion to Dismiss and for Summary Judgment ("Def.'s Mot.") and the Plaintiff's Cross-Motion for Summary Judgment and Response in Opposition to Defendant's Motion to Dismiss (Document #6) ("Pl.'s Cross-Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion to dismiss and for summary judgment and deny the plaintiff's cross-motion for summary judgment.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendant's Motion to Dismiss and for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"); (3) the Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment and Response in Opposition to Defendant's Motion to Dismiss and for Summary Judgment (Document #6) ("Pl.'s Mem."); (4) the Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute ("Pl.'s Facts"); (5) the Reply in Support of Defendant's Motion to Dismiss and for Summary Judgment and Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply"); (6) the Defendant's Response to Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Reply to Pl.'s Facts"); and (7) the Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply").

# I.    BACKGROUND

"In the 1990[]s and 2000[]s, [the] [p]laintiff was the target of at least two federal criminal investigations," Pl.'s Facts ¶ 1; Def.'s Reply to Pl.'s Facts ¶ 1, but "was never charged with a[] crime," Pl.'s Facts ¶ 2; Def.'s Reply to Pl.'s Facts ¶ 2.  According to the plaintiff, "[d]uring [the] second investigation, the government seized many of [the plaintiff's] assets, and it filed four civil forfeiture actions [(the "civil forfeiture actions")] in 2003 and 2004."  Compl. ¶ 9.  On August 1, 2012, the "[p]laintiff entered into a [s]ettlement [a]greement [(the 'Settlement Agreement')] with the [Internal Revenue Service ("IRS")], in order to obtain the return of a large sum of assets that the government had seized and refused to return."  Pl.'s Facts ¶ 3; Def.'s Reply to Pl.'s Facts ¶ 3.  The Settlement Agreement "resulted in the dismissal of [the] civil forfeiture actions."  Def.'s Facts ¶ 2.  In relevant part, the Settlement Agreement states:

> Jon R. Rogers, his assigns, and heirs, hereby unconditionally release and forever discharge the United States . . . from and against any and all manner of claims, actions, causes of action, rights, set-offs, promises, allegations, expenses, assessments, penalties, charges, injuries, losses, costs, obligations, duties, suits, proceedings, debts, dues, contracts, judgments, damages, claims, counterclaims, liabilities and/or demands of every kind, character and manner whatsoever in law or equity, administrative or judicial, contract, tort (including negligence of all kinds) or otherwise, whether known or unknown, claimed or unclaimed, asserted or unasserted, suspected or unsuspected, discovered or undiscovered, choate or inchoate, accrued or unaccrued, anticipated or unanticipated, contingent or fixed, for, upon, or by reason of any and all matters whatsoever, related to and/or in connection with or arising out of these Forfeiture Actions.

Def.'s Mot., Exhibit ("Ex.") 1 (Settlement Agreement) ¶ 9.

"On November 29, 2012, [the] [p]laintiff submitted a . . . []FOIA[] request to several agencies, including [the defendant] and the IRS," seeking documents related to the civil forfeiture actions.  Def.'s Facts ¶¶ 4, 5; Pl.'s Facts ¶ 4.  According to the plaintiffs, in April 2013, the "[d]efendant required payment of $548 from [the] [p]laintiff (which [the] [p]laintiff paid), upon receipt of which [the] [d]efendant stated that 'documents will be released to you.'"  Pl.'s

Facts ¶ 5.  After failing to respond to repeated requests by the plaintiff for an update regarding the processing of the plaintiff's FOIA request, Pl.'s Facts ¶ 6, "[i]n September 2016, [the] [d]efendant denied [the] [p]laintiff's FOIA request, relying on the terms of the [ ] Settlement Agreement," Pl.'s Facts ¶ 7; Def.'s Reply to Pl.'s Facts ¶ 7.  In 2016, the plaintiff appealed the defendant's denial of his FOIA request to the United States Department of Justice's Office of Information Policy ("OIP"), which "granted [the] [p]laintiff's administrative appeal[] and promised that [the defendant] 'w[ould] send' [the] [p]laintiff documents."  Pl.'s Facts ¶ 8; Def.'s Reply to Pl.'s Facts ¶ 8.  The "[d]efendant then made subsequent assurances that it would produce documents" to the plaintiff."  Pl.'s Facts ¶ 9; Def.'s Reply to Pl.'s Facts ¶ 9.  However, the "[d]efendant has not produced . . . [any] document[s] to [the] [p]laintiff," Pl.'s Facts ¶ 10; Def.'s Reply to Pl.'s Facts ¶ 10.  On February 26, 2018, the plaintiff filed his Complaint in this Court, seeking to compel the production of the documents that he requested.[2]  Compl. at 1.  In response, the defendant filed its motion for summary judgment in its favor on the plaintiff's FOIA and Privacy Act claims and to dismiss the plaintiff's breach of contract claim, see Def.'s Mot. at 1, and the plaintiff then filed his cross-motion for summary judgment, see Pl.'s Cross-Mot. at 1.  These motions are the subject of this Memorandum Opinion.

## II.      STANDARDS OF REVIEW

### A.      Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

---

[2] Prior to filing the current lawsuit against the defendant in this Court, the plaintiff filed a lawsuit against the IRS in the Southern District of Ohio, challenging the IRS's denial of the same FOIA request.  Def.'s Facts ¶¶ 6, 7; Pl.'s Facts at 1. The Southern District of Ohio granted summary judgment for the IRS, and the Sixth Circuit affirmed. Def.'s Facts ¶¶ 9, 10 (citing Rogers v. IRS, No. 2:13-cv-0797, 2015 WL 881514, at *7 (S.D. Ohio Mar. 2, 2015), aff'd, 822 F.3d 854 (6th Cir. 2016)); Pl.'s Facts at 1.

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction,'" Morrow v. United States, 723 F. Supp. 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the questions [of] whether it has jurisdiction [over] the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefits of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption. See, e.g., Kowal, 16 F.3d at 1276. Along with the allegations made within the four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Rule 56 Motion for Summary Judgment**

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. FTC, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  At bottom, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure."  Boyd v. Crim. Div. of U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted).  The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be

drawn from them are construed in the light most favorable to the FOIA requester." <u>Friends of Blackwater v. U.S. Dep't of Interior</u>, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting <u>Greenberg v. U.S. Dep't of Treasury</u>, 10 F. Supp. 2d 3, 11 (D.D.C. 1988)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested has either been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" <u>Students Against Genocide</u>, 257 F.3d at 833 (first alteration in original) (quoting <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.    ANALYSIS

The plaintiff asserts three causes of action in his Complaint: (1) violation of the FOIA, <u>see</u> Compl. ¶¶ 38–41; (2) violation of the Privacy Act, <u>see id.</u> ¶¶ 42–45; and (3) common law breach of contract, <u>see id.</u> ¶¶ 46–54.  The defendant moves to dismiss the plaintiff's breach of contract claim and for summary judgment in its favor on the plaintiff's FOIA and Privacy Act claims.  <u>See</u> Def.'s Mem. at 1.  The plaintiff opposes the defendant's motion to dismiss his breach of contract claim and cross-moves for summary judgment in his favor on his FOIA and Privacy Act claims.  <u>See</u> Pl.'s Mem. at 2. The Court will address each of the parties' motions in turn.

### A.    The Defendant's Motion to Dismiss

The defendant argues that the Court must dismiss the plaintiff's breach of contract claim, which asserts that the defendant breached its "promise[] to process [the] plaintiff's [FOIA] request," Compl. ¶ 47, and seeks "specific performance of [the] defendant's [purported] contractual obligations," <u>id.</u> ¶ 54.  The defendant argues that the plaintiff's breach of contract claim should be dismissed for three reasons: (1) the Court lacks jurisdiction because the plaintiff

"seeks specific performance" and "[t]he sole remedy for an alleged breach of contract by the
federal government is a claim for money damages," Def.'s Mem. at 12 (internal quotation marks
omitted); (2) the Court lacks jurisdiction for the additional reason that the plaintiff's claim "is
now moot[] [because] [the defendant] has begun processing the return of his payment," id.; and
(3) the plaintiff's claim "fails because there can be no debate about the fact that [the defendant]
did not [intend for] its request that [the] [p]laintiff pay the processing fee to create a contractual
relationship," id.  The plaintiff responds that (1) "the [District of Columbia] Circuit has explicitly
permitted breach of contract claims to vindicate other statutory or constitutional rights," Pl.'s
Mem. at 20, and "the remedies [the] [p]laintiff seeks are statutory remedies," id. at 21–22; (2) he
has not received a reimbursement from the defendant, and regardless, he "is seeking a statutory
FOIA remedy, not a pure contract remedy," id. at 23; and (3) "[e]ven if this Court were to find
that [the] [d]efendant's 2013 promise to process [the] [p]laintiff's FOIA request in exchange for
payment is insufficient to bind the parties by express contract, [the] [d]efendant nevertheless
should be bound on the theory that there is an implied-in-fact contract between the parties," id. at
17.  Before turning to the parties' other arguments, the Court must first resolve whether it can
exercise jurisdiction over the plaintiff's breach of contract claim.

   The defendant first argues that this Court lacks jurisdiction over the plaintiff's breach of
contract claim because "the sole remedy for an alleged breach of contract by the federal
government is a claim for money damages, either in the United States [ ] Court [of Federal
Claims] under the Tucker Act, 28 U.S.C. § 1491(a)(1) [(2018)], or, if damages of no more than
$10,000 are sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2)," Def.'s
Mem. at 12 (quoting Yee v. Jewell, 228 F. Supp. 3d 48, 55 (D.D.C. 2017)), and that "there has
been no waiver of sovereign immunity for a breach of contract claim seeking specific

performance against the federal government," id.  The plaintiff responds that this "Circuit has

explicitly permitted breach of contract claims to vindicate other statutory or constitutional

rights," Pl.'s Mem. at 20, and that while the "[p]laintiff's Complaint relies in part on the

existence of his contract with the government and uses the term 'specific performance,'" id. at

21, "at its core, [the] [p]laintiff's [C]omplaint includes a FOIA claim," id. at 22, and "the FOIA

is the statute that gives [the] [p]laintiff his rights, and thus provides the source of the relief that

[the] [p]laintiff seeks," id.  The Court agrees with the defendant.

To determine whether the Court is barred from exercising jurisdiction over the plaintiff's

breach of contract claim, the Court must address whether the claim falls within the purview of

the Tucker Act or Little Tucker Act.

> "[A]n action must be brought under the Tucker Act in the Court of Federal Claims,"
> rather than in [a] federal district court, if it: (1) "seeks more than $10,000 in
> monetary relief from the federal Government"; (2) "is essentially a contract action,"
> and (3) "the Court of Federal Claims would have jurisdiction over the matter."

Hall v. Nielsen, Civ. Action Nos. 18-461, 18-1548 (JEB), 2019 WL 250972, at *3 (D.D.C. Jan.

17, 2019) (first alteration in original) (quoting Yee, 228 F. Supp. 3d at 56); see Hoffman v.

United States, 266 F. Supp. 2d 27, 36 (D.D.C. 2003) (noting that the Little Tucker Act "vests

district courts with concurrent jurisdiction with the Court of Federal Claims over civil actions or

claims against the United States not in excess of $10,000" (emphasis added)).  "To determine

whether [a] plaintiff's claim is essentially a contract action [subject to the exclusive jurisdiction

of the Tucker Act or the Little Tucker Act], this Court must 'consider both 'the source of the

rights upon which the plaintiff bases [his] claims' and 'the type of relied sought (or

appropriate).'"  Associated Mortg. Bankers Inc. v. Carson, 279 F. Supp. 3d 58, 65 (D.D.C. 2017)

(quoting Albrecht v. Comm. on Empl. Benefits of Fed. Reserve Emp. Benefits Sys., 357 F.3d 62,

68 (D.C. Cir. 2004)).

Claims that turn entirely on the terms of a contract will frequently fall under the label of a contract action, whereas statutory or constitutional claims will not. Claims for monetary relief or specific performance suggest the claim is more like a contract action, whereas other types of relief suggest the opposite.

Id. (citations omitted).

Here, the Court concludes that the plaintiff's breach of contract claim is "essentially a contract action." Hall, 2019 WL 250972, at *3. "In Megapulse[, Inc. v. Lewis], [this Circuit] held the action [there] was not founded upon a contract in part because the plaintiff[] sought no specific performance of the contract and no damages, presumably because specific performance is an explicitly contractual remedy and because 'damages are a prototypical contract remedy.'" Perry Capital LLC v. Mnuchin, 864 F.3d 591, 619 (D.C. Cir. 2017) (citation omitted) (first citing Megapulse, Inc. v. Lewis, 672 F.2d 959, 969 (D.C. Cir. 1982); then quoting A & S Council Oil Co. v. Lader, 56 F.3d 234, 240 (D.C. Cir. 1995)). Unlike the plaintiff in Megapulse, which "d[id] not claim a breach of contract" and whose "claim [was] not properly characterized as one for specific performance," 672 F.2d at 969, here, the plaintiff explicitly states a claim for breach of contract, see Compl. ¶¶ 46–54, and seeks specific performance of the contract, see id. ¶ 54. Moreover, contrary to the plaintiff's argument otherwise, see Pl.'s Mem. at 20–22, any right of the plaintiff to disclosure of documents is predicated on the contract purportedly entered into by the parties—not on the FOIA, since, as discussed infra Part III.B, the plaintiff effectively waived his right to disclosure of the requested documents pursuant to the FOIA upon execution of the Settlement Agreement, see Spectrum Leasing Corp. v. United States, 764 F.2d 891, 894 (D.C. Cir. 1985) ("The right to these payments is created in the first instance by the contract, not by the Debt Collection Act. The [Act], even if applied, confers no such right in the absence of the contract itself."); cf. Perry Capital LLC, 864 F.3d at 619 ("These claims against Treasury are not a disguised contract action because they do not seek to enforce any duty imposed upon Treasury

by the Stock Agreements—the only relevant contracts to which Treasury is a party." (citation and internal quotation marks omitted)).

Having determined that the plaintiff's breach of contract claim is essentially contractual and therefore falls within the purview of the Tucker Act or Little Tucker Act, see Associated Mortg. Bankers Inc., 279 F. Supp. 3d at 65, and given that the plaintiff seeks specific performance, rather than a monetary judgment, see Compl. ¶ 54 (alleging that the "plaintiff's only satisfactory remedy is for specific performance of [the] defendant's contractual obligations" (emphasis added)), the Court concludes that it lacks jurisdiction over the plaintiff's breach of contract claim, see Stewart v. Mabus, Civ. Action No. 15-576 (GK), 2016 WL 753939, at *7 (D.D.C. Feb. 24, 2019) ("'[T]he Tucker Act and Little Tucker Act' provide the exclusive remedies for any alleged breach of contract by the federal government and thereby 'impliedly forbid' the federal courts' jurisdiction to grant declaratory relief or specific performance in contract cases." (quoting Sharp v. Weinberger, 798 F.2d 1521, 1253 (D.C. Cir. 1986)). Accordingly, the Court must dismiss the plaintiff's breach of contract claim for lack of jurisdiction.[3]

## B.     The Parties' Cross-Motions for Summary Judgment

The defendant argues that summary judgment should be granted in its favor with respect to the plaintiff's FOIA and Privacy Act claims because (1) "[e]ach of [the] [p]laintiff's claims is barred by the Settlement Agreement," "[s]pecifically, [the plaintiff's agreement to] release any and all claims related in any way to the civil forfeiture actions" (the "Release"), Def.'s Mem. at 5; and (2) "the final decisions of the Southern District of Ohio and the Sixth Circuit preclude

---

[3] Because the Court does not have jurisdiction to hear the plaintiff's breach of contract claim, it need not address the parties' remaining arguments regarding whether the parties entered into an implied-in-fact contract, see Def.'s Mem. at 12–14; Pl.'s Mem. at 15–25, and whether the plaintiff's breach of contract claim is now moot, see Def.'s Mem. at 12; Pl.'s Mem. at. 23.

[the] [p]laintiff's claims," <u>id.</u> at 9; <u>see</u> <u>Rogers v. IRS</u>, No. 2:13-cv-0797, 2015 WL 881514, at *4 (S.D. Ohio Mar. 2, 2015), <u>aff'd</u>, 822 F.3d 854 (6th Cir. 2016). The plaintiff responds that summary judgment should instead be granted in his favor because this Circuit's recent decision in <u>Price v. United States Department of Justice Attorney Office</u> "reject[ed] virtually the same defense asserted by the [defendant] in this case" that the plaintiff waived his FOIA and Privacy Act rights related to the civil forfeiture actions. Pl.'s Mem. at 2 (citing <u>Price v. U.S. Dep't of Justice Attorney Office</u>, 865 F.3d 676, 678 (D.C. Cir. 2017)). Alternatively, the plaintiff argues that even if the Release is enforceable under <u>Price</u>, "the government knowingly, voluntarily, and expressly (in writing) waived its reliance on the Settlement Agreement, in the . . . []OIP[] 2016 decision to grant [the] [p]laintiff's appeal" (the "2016 decision"), <u>id.</u> at 6; or "the government should be estopped from reliance upon the Settlement Agreement," <u>id.</u> at 9. The Court first addresses whether the plaintiff's FOIA and Privacy Act claims are barred by the Release and then addresses whether the defendant may rely on the Release.

### 1. Whether the Plaintiff's Claims are Barred by the Release

In resolving the parties' cross-motions for summary judgment, the Court must first address whether the Release is enforceable. The defendant argues that, in signing the Settlement Agreement, the "[p]laintiff agreed to release any and all claims related in any way to the civil forfeiture actions in return for having the lion's share of his forfeited assets returned . . . [and, because] there can be no dispute that [the] [p]laintiff's FOIA request relate[s] to the forfeiture actions, this broad release unequivocally bars his claims in this matter." Def.'s Mem. at 5 (sixth alteration in original) (internal quotation marks omitted). As noted earlier, the plaintiff responds that this Circuit's decision in <u>Price</u> "reject[ed] virtually the same defense asserted by the [defendant] in this case." Pl.'s Mem. at 2. According to the plaintiff, <u>Price</u> "require[s] that,

whenever the government seeks to enforce a waiver of FOIA rights in a criminal matter, it must demonstrate a compelling criminal justice reason for doing so," but "the [defendant] has offered no reason whatsoever supporting its invocation of the [ ] Settlement Agreement." Id. at 3.

In Price, this Circuit held that the district court erred in enforcing the FOIA waiver contained in a criminal defendant's guilty plea agreement because "[u]nder the[] particular circumstances [presented in that case,] . . . the public interest in enforcing [the defendant's] waiver [wa]s outweighed by the harm to public policy that enforcement would cause." 865 F.3d at 683. However, the Circuit made clear that its decision should not be construed as a broader prohibition against FOIA waivers in plea agreements generally. Specifically, the Circuit stated:

> To be clear, we do not hold that FOIA waivers in plea agreements are always unenforceable. We simply hold that the government may not invoke [the defendant's] FOIA waiver as a basis for denying him access to the records he requests because, in this case, the government has given us no adequate rationale for enforcing this waiver in light of the public-policy harms [the defendant] has identified. That's it.

Id.

The plaintiff urges the Court to extend the narrow holding in Price—i.e., that a FOIA waiver in a plea agreement may be unenforceable under particular circumstances, namely, when "enforcing a FOIA waiver would make it harder for litigants in [a criminal defendant's] position to discover potentially exculpatory information or material supporting an ineffective-assistance-of-counsel claim," id.—far beyond the context presented to the Circuit in Price, to a settlement agreement in a civil case, see Pl.'s Mem. at 2–6.

The Court finds that the plaintiff's reliance on Price is misplaced and declines to extend the Price holding as requested by the plaintiff. No published opinion, to the Court's knowledge, has found that the Price holding applies to civil settlement agreements. Rather, even though decided before Price, other members of this Court have upheld the waiver of FOIA rights in the

context of civil settlement agreements.  See Pub. Emps. for Envtl. Responsibility v. EPA, 926 F. Supp. 2d 48, 54 (D.D.C. 2013) ("[T]here can be no doubt that an identical FOIA[] claim or civil suit by [the FOIA requester] was covered and precluded by the broad language of the settlement agreement.  [The requester] is a highly educated man, and he was represented by counsel.  A settlement agreement is a contract, and [the requester] is bound by the contract he signed . . . . The Court has no hesitancy in holding [the requester] to the bargain he struck."); cf. Montgomery v. IRS, 292 F. Supp. 3d 391, 397 (D.D.C. 2018) (noting the enforceability of the Release in this plaintiff's case when he was before the Southern District of Ohio, which was affirmed by the Sixth Circuit).  As the Southern District of Ohio ruled in the plaintiff's case when he was before that court, the same Release at issue in this case is enforceable and the plaintiff's nearly identical FOIA suit that is now before this Court "on its face . . . fits within the [R]elease."  Rogers, 2015 WL 881514, at *4.  This Court likewise concludes that the Release is enforceable and that it covers the plaintiff's FOIA and Privacy Act claims asserted in this case.

### 2.  Whether the Defendant May Rely on the Settlement Agreement

The Court's finding that the Release is enforceable and covers the plaintiff's FOIA and Privacy Act claims does not, however, end its inquiry.  The plaintiff argues that even if the Release is enforceable, it is not dispositive because the defendant waived its reliance on the Release in the OIP's 2016 decision granting the plaintiff's FOIA appeal, see Pl.'s Mem. at 6, or alternatively, that the defendant should be equitably estopped from relying on the Settlement Agreement, see id. at 9.  The Court will address each of these arguments in turn.

### a.  Waiver

The plaintiff first argues that "the [defendant] should not be permitted to invoke the Settlement Agreement . . . because the [defendant] knowingly, voluntarily, and expressly (in

writing) waived its reliance on the Settlement Agreement, in the . . . []OIP[] 2016 decision to grant [the] [p]laintiff's [FOIA] appeal." Pl.'s Mem. at 6. The defendant responds that the "[p]laintiff's arguments fall far short of the 'unmistakable terms' required to demonstrate that the decision to begin processing [the] [p]laintiff's FOIA request constituted a waiver of the [defendant's] ability to rely on [the] [p]laintiff's voluntary Settlement Agreement." Def.'s Reply at 5–6 n.3. The Court again agrees with the defendant.

"The government conduct giving rise to the defense of waiver must constitute an 'intentional relinquishment or abandonment of a known right.'" <u>United States v. Honeywell Int'l, Inc.</u>, 841 F. Supp. 2d 112, 115 (D.D.C. 2012) (quoting <u>United States v. Weathers</u>, 186 F.3d 948, 955 (D.C. Cir. 1999)). Moreover, "[t]he waiver must be made by one having the authority to do so." <u>Id.</u> (citing <u>Fed. Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 384 (1947)).

As a preliminary matter, the OIP's 2016 decision did not clearly "intentional[ly] relinquish[] or abandon[]" the defendant's rights provided in the Settlement Agreement. <u>Honeywell Int'l, Inc.</u>, 841 F. Supp. 2d at 115 (quoting <u>Weathers</u>, 186 F.3d at 955). "The Supreme Court has clearly stated that 'a waiver of sovereign authority will not be implied, but must instead be surrendered in unmistakable terms.'" <u>United States v. Philip Morris, Inc.</u>, 300 F. Supp. 2d 61, 69 (D.D.C. 2004) (quoting <u>United States v. Cherokee Nation of Okla.</u>, 480 U.S. 700, 707 (1987)). In his appeal to the OIP, the plaintiff listed four separate grounds for appeal: (1) "the goal [of the FOIA] is broad disclosure," Compl., Ex. 13 (OIP Appeal) at 2 (capitalization removed); (2) "the wrongful nature of the denial" of his FOIA request, <u>id.</u>, Ex. 13 (OIP Appeal) at 2 (capitalization removed); (3) "the . . . [defendant] waived the . . . Settlement Agreement by its subsequent conduct," <u>id.</u>, Ex. 13 (OIP Appeal) at 2 (capitalization removed); and (4) "the

[defendant] supplanted the . . . Settlement Agreement by entering into a subsequent agreement," id., Ex. 13 (OIP Appeal) at 4 (capitalization removed). In its decision letter, the OIP stated:

> After carefully considering [the plaintiff's] appeal, and as a result of discussions between [the defendant's] personnel and this Office, [the OIP] [is] remanding [the plaintiff's] request to [the defendant] for a search of responsive records. If [the defendant] locates releasable records, it will send them to [the plaintiff] directly, subject to any applicable fees.

Id., Ex. 14 (OIP Decision). The plaintiff asks the Court to infer that the OIP based its remand decision on acceptance of the plaintiff's position that the defendant waived the terms of the Settlement Agreement. See Pl.'s Mem. at 7. However, nowhere in the 2016 decision does the OIP expressly indicate that it was remanding the plaintiff's FOIA request because it found that the defendant had waived the terms of the Settlement Agreement. Therefore, the Court concludes that the purported waiver by the OIP was not made in the "unmistakable terms" required for a valid waiver by a sovereign authority. See Philip Morris, 300 F. Supp. 2d at 69 (concluding that the defendants failed to "demonstrate an 'unmistakable' intent on the part of the United States to waive its right to bring a civil RICO action," when "[n]one of the facts set forth by [the] [d]efendants mention[ed] RICO or ha[d] any connection to the Attorney General's statutory right to enforce that statute").

Moreover, even if the Court could conclude that the purported waiver was "unmistakable," Cherokee Nation, 480 U.S. at 707, the Court is not persuaded that the plaintiff has satisfied his burden to prove that the OIP had authority to waive a provision of the Settlement Agreement. The plaintiff argues that "[t]he waiver was made by a government official with the responsibility to decide and full power . . . to make such a waiver, under both the [FOIA] and [Department of Justice] regulations," Pl.'s Mem. at 8, but he cites to no such FOIA provision or regulation. See generally Pl.'s Mem. at 6–8. And, it is not otherwise

apparent to the Court that the FOIA or the Department of Justice's regulations do in fact confer

such authority on the OIP.  See 5 U.S.C. § 552(a)(6)(A)(i) (conferring on FOIA requesters the

general right to administratively appeal adverse determinations made on their requests, but not

addressing the OIP or its role); 28 C.F.R. § 0.24 (describing the functions assigned to the OIP,

which include, inter alia, "[d]eveloping, coordinating, and implementing policy with regard to

the . . . []FOIA[], including publishing guidance and other materials related to FOIA matters,"

and "[p]roviding legal assistance and advice to government agencies and organizational

components of the Department on questions regarding the interpretation and application of the

FOIA").  The only authority that the plaintiff cites in support of his argument that the OIP could

effect a waiver of the Settlement Agreement is Gresham & Co. v. United States, in which the

court held that

> [t]he Government waiver of a contract provision requires a decision by a
> responsible officer assigned to the function of overseeing the essentials of contract
> performance, not just any Federal employee or officer whose work happens to be
> connected with the contract.  Such a waiver by one with such authority will estop
> the Government.

Pl.'s Mem. at 8 n.8 (quoting Gresham & Co. v. United States, 470 F.2d 542, 543 (Ct. Cl. 1972)).

However, rather than lending support to the plaintiff's waiver argument, Gresham cuts against it

and instead suggests to the Court that the OIP does not have authority to waive a provision of the

Settlement Agreement.  Here, the OIP's "work happens to be connected with the [Settlement

Agreement]," Gresham, 470 F.2d at 555, only by virtue of the fact that the Settlement Agreement

was raised in the defendant's FOIA administrative appeal to the OIP; however, the OIP is not

"assigned the function of overseeing the essentials of [ ] performance [of the Settlement

Agreement]," id.; see 28 C.F.R. § 0.24 (describing the functions of the OIP).  Accordingly, the

Court concludes that the plaintiff has not satisfied his burden to demonstrate a valid waiver of the Settlement Agreement by the defendant.

### b. Equitable Estoppel

The plaintiff next argues that the defendant "should [ ] be estopped from reliance upon the Settlement Agreement, having expressly disclaimed such reliance by granting [the] [p]laintiff's administrative appeal in 2016." Pl.'s Mem. at 9. The defendant responds that the plaintiff's argument must fail because "[t]here can be no serious argument that the [defendant's] decision to invoke [the] [p]laintiff's own [Settlement] Agreement . . . is evidence of 'misrepresentation' or works an 'egregiously unfair result.'" Def.'s Reply at 5. The Court yet again agrees with the defendant.

"The doctrine of equitable estoppel is not, in itself, either a claim or a defense. Rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct." ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988). While "[t]he fundamental principle of equitable estoppel applies to government agencies, as well as to private parties[,] . . . its application must be rigid and sparing." Id. (first alteration in original) (internal quotation marks omitted); see Philip Morris, Inc., 300 F. Supp. 2d at 70 ("[N]either the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the government." (citing Office of Personnel v. Richmond, 496 U.S. 414, 422 (1990)).

> To apply equitable estoppel to the government, a party must show that (1) "there was a 'definite' representation to the party claiming estoppel," (2) the party "relied on its adversary's conduct in such a manner as to change his position for the worse," (3) the party's "reliance was reasonable[,]" and (4) the government "engaged in affirmative misconduct."

Morris Commc'ns, Inc. v. FCC, 566 F.3d 184, 191 (D.C. Cir. 2009) (quoting Graham v. SEC, 222 F.3d 994, 1107 (D.C. Cir. 2000)).   "Estoppel generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." GAO v. Gen. Accounting Office Pers. Appeals Bd., 698 F.2d 516, 526 (D.C. Cir. 1983).

In Hertzberg v. Veneman, the plaintiff attempted to estop the government from withholding investigative documents pursuant to FOIA exemptions, based on the government's "repeated assurances to [the] plaintiff, to his clients and to Congress that . . . the report w[ould] be released to [the] [plaintiff]."  273 F. Supp. 2d 67, 82 (D.D.C. 2003) (fifth alteration in original) (internal quotation marks omitted).  The plaintiff argued that "he and his clients reasonably relied on these assurances to delay their own investigation and to seek congressional assistance in the matter."  Id.  Another member of this Court rejected the plaintiff's estoppel argument, finding that the plaintiff "ha[d] not demonstrated that he ha[d] detrimentally relied on [the] defendant's representations or that an injustice w[ould] result if [the] defendant [was] not estopped from withholding these materials."  Id. at 83.  The Court reasoned that "[w]hile these alleged misrepresentations, if true, certainly put [the] plaintiff at some disadvantage," id. at 83, "[i]f an independent investigation would have been impossible at any time, then [the] [p]laintiff's delay based on [the] defendant's representations is of no consequence . . . and no injustice w[ould] result from declining to invoke equitable estoppel," id. at 84.

As in Hertzberg, this Court concludes that no injustice would result from declining to invoke equitable estoppel.  Like the defendant in Hertzberg, the defendant here also made "repeated assurances to [the] plaintiff" that his FOIA request would be processed.  273 F. Supp. 2d at 82; see Pl.'s Facts ¶ 9; Def.'s Reply to Pl.'s Facts ¶ 9.  However, as previously decided, the

Settlement Agreement executed by the plaintiff is enforceable.  Therefore, the plaintiff cannot demonstrate that "an 'injustice' will result if [the] defendant is not estopped from withholding these materials," <u>Hertzberg</u>, 273 F. Supp. 2d at 83, because the plaintiff has not demonstrated that he is entitled to the requested documents, and therefore the defendant's withholding of the requested documents is "of no consequence," <u>id.</u> at 84.  While the Court is troubled by the government's seemingly disingenuous conduct, it does not find that the conduct has created an "egregiously unfair result" that warrants application of equitable estoppel against the government, <u>Gen. Accounting Office Pers. Appeals Bd.</u>, 698 F.2d at 526, particularly since the plaintiff was represented by counsel and voluntarily entered into the Settlement Agreement. Def.'s Mot., Ex. 1 (Settlement Agreement) at 8; <u>see</u> <u>Pub. Emps. for Envtl. Responsibility</u>, 926 F. Supp. 2d at 54 (expressing "no hesitancy in holding [the FOIA requester] to the bargain he struck" because he was "a highly educated man, and he was represented by counsel").

In sum, because the Court concludes that the plaintiff's FOIA and Privacy Act claims are barred by the Settlement Agreement, the Court must grant the defendant's motion for summary judgment as to these claims and deny the plaintiff's cross-motion for summary judgment.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Court dismisses the plaintiff's breach of contract claim for lack of jurisdiction and enters summary judgment in favor of the defendant and against the plaintiff on the plaintiff's FOIA and Privacy Act claims.[5]

---

[4] Having concluded that summary judgment in the defendant's favor is appropriate based on its conclusion that the plaintiff's FOIA and Privacy claims are barred by the Settlement Agreement, the Court need not address the defendant's alternative argument that summary judgment in its favor is appropriate because "the final decisions of the Southern District of Ohio and the Sixth Circuit preclude [the] [p]laintiff's claims."  Def.'s Mem. at 9.

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

**SO ORDERED** this 9th day of April, 2019.

REGGIE B. WALTON
United States District Judge